**[J-28-2024] [MO: Todd, C.J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | |
|---|---|
| BRAD LEE HEROLD, AS EXECUTOR OF THE ESTATE OF WILLIAM L. HEROLD | : No. 22 WAP 2023 |
| | : |
| | : Appeal from the Order of the |
| | : Commonwealth Court entered |
| v. | : February 16, 2023, at No. 998 CD |
| | : 2021, Affirming the Order of the |
| | : Court of Common Pleas of |
| UNIVERSITY OF PITTSBURGH - OF THE | : Allegheny County entered May 17, |
| COMMONWEALTH SYSTEM OF HIGHER | : 2021, at No. GD-19-014532 and |
| EDUCATION AND 3M COMPANY; ABB | : remanding. |
| MOTORS AND MECHANICAL, INC. F/K/A | : |
| BALDOR ELECTRIC COMPANY; ALLIED | : ARGUED:  April 10, 2024 |
| GLOVE CORPORATION; A.O. SMITH | : |
| CORPORATION; ARMSTRONG | : |
| INTERNATIONAL, INC.; AURORA PUMP | : |
| COMPANY; BALTIMORE AIRCOIL | : |
| COMPANY, INC.; BEAZER EAST, INC. | : |
| INDIVIDUALLY AND AS SUCCESSOR TO | : |
| KOPPERS COMPANY, INC., AND | : |
| SUCCESSOR-IN INTEREST TO THIEM | : |
| CORPORATION AND UNIVERSAL | : |
| REFRACTORIES COMPANY; BMI | : |
| REFRACTOR SERVICES, INC.; | : |
| INDIVIDUALLY AND AS SUCCESSOR-IN- | : |
| INTEREST TO PREMIER REFRACTORIES, | : |
| INC., F/K/A ADIENCE, INC., SUCCESSOR- | : |
| IN-INTEREST TO ADIENCE COMPANY, | : |
| LP, AS SUCCESSOR TO BMI, | : |
| INC.;BURNHAM BOILER CORPORATION | : |
| N/D/B/A BURNHAM COMMERCIAL; | : |
| BRYAN STEAM, LLC; CARRIER | : |
| CORPORATION; CBS CORPORATION, A | : |
| DELAWARE CORPORATION, F/K/A | : |
| VIACOM INC., SUCCESSOR BY MERGER | : |
| TO CBS CORPORATION, A | : |
| PENNSYLVANIA CORPORATION, F/K/A | : |
| WESTINGHOUSE ELECTRIC | : |
| CORPORATION AND WESTINGHOUSE | : |
| AIR BRAKE COMPANY; CLEAVER | : |
| BROOKS, INC., F/K/A AQUA-CHEM, INC. | : |
| D/B/A CLEAVER BROOKS DIVISION; | : |

CRANE CO.; DELVAL EQUIPMENT CORPORATION; DEZURIK, INC.; DONALD MCKAY SMITH, INC.; DUNHAM-BUSH, INC.; E.E. ZIMMERMAN COMPANY; EATON CORPORATION IN ITS OWN RIGHT AND AS SUCCESSOR TO CUTLER-HAMMER,INCORPORATED; EICHLEAY CORPORATION; FERRO ENGINEERING DIVISION OF ON MARINE SERVICES COMPANY, LLC, F/K/A OGLEBAY NORTON COMPANY;FLOWSERVE US, INC., INDIVIDUALLY AND AS SUCCESSOR TO BYRON JACKSON PUMPS, FLOWSERVEGESTRA, DURAMETALLIC CORP., ALDRICH PUMPS; CAMERON PUMPS; VOGT VALVES;WILSON-SNYDER CENTRIFUGAL PUMP; AND ROCKWELL VALVES; FMC CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO PEERLESS PUMP COMPANY, CHICAGO PUMP COMPANY, STERLING FLUID SYSTEM, INC. AND FORMER SUBSIDIARY CROSBY VALVE, INC.; FOSECO, INC.; FOSTER WHEELER CORPORATION; GARDNER DENVER, INC.; GENERAL ELECTRIC COMPANY; GRINNELL LLC; GOULDS PUMPS, LLC; I.U. NORTH AMERICA, INC.; AMERICA, INC. AS SUCCESSOR-BY-MERGER TO THE GARP COMPANY, F/K/A THE GAGE COMPANY, F/K/A PITTSBURGH GAGE AND SUPPLY COMPANY; IMO INDUSTRIES, INC., F/K/A IMO DELAVAL, INC., F/K/A TRANSAMERICAN DELAVAL, INC., F/K/A DELAVAL TURBIN, INC., DELAVAL TURBIN, INC., DEVALCO CORPORATION; INGERSOLL-RAND COMPANY; INSUL COMPANY, INC.; ITT CORPORATION, F/K/A ITT INDUSTRIES, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BELL & GOSSETT DOMESTIC PUMP; J.H. FRANCE REFRACTORIES COMPANY; KRUMAN EQUIPMENT COMPANY; MALLINCKRODT US LLC, IN ITS OWN RIGHT AND AS

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

SUCCESSOR-IN-INTEREST TO IMCERA : 
GROUP, INC., AND INTERNATIONAL : 
GROUP, INC., AND INTERNATIONAL : 
MINERALS AND CHEMICAL : 
CORPORATION, AND AS SUCCESSOR- : 
IN-INTEREST TO E.J. LAVINO; MINE : 
SAFETY APPLIANCES COMPANY, LLC AS : 
SUCCESSOR-IN-INTEREST BY MERGER : 
WITH MINE SAFETY APPLIANCES : 
COMPANY; MINNOTTE CONTRACTING : 
CORPORATION; M.S. JACOBS & : 
ASSOCIATES, INC.; NAGLE PUMPS, INC.; : 
PEERLESS INDUSTRIES, INC.; POWER : 
PIPING COMPANY; RILEY POWER INC.; : 
SAFETY FIRST INDUSTRIES, INC., IN ITS : 
OWN RIGHT AND AS SUCCESSOR-IN- : 
INTEREST TO SAFETY-FIRST SUPPLY, : 
INC.; SCHNEIDER ELECTRIC USA, INC. : 
F/K/A SQUARE D COMPANY, IN ITS OWN : 
RIGHT AND AS SUCCESSOR TO THE : 
ELECTRIC CONTROLLER AND : 
MANUFACTURING (EC&M); SPIRAX : 
SARCO, INC.; SPX COOLING : 
TECHNOLOGIES, INC., F/K/A MARLEY : 
COOLING TECHNOLOGIES INC., F/K/A : 
THE MARLEY COOLING COMPANY; : 
TACO, INC. F/K/A TACO HEATERS, INC.; : 
THE GOODYEAR TIRE & RUBBER : 
COMPANY; THE GORDON-RUPP : 
COMPANY; THE H.B. SMITH COMPANY, : 
INC.; TRANE U.S. INC., SUCCESSOR-BY- : 
MERGER TO AMERICAN STANDARD, : 
INC., UNION CARBIDE CORPORATION; : 
UNITED STATES STEEL CORPORATION; : 
WARREN PUMPS LLC; WEIL-MCLAIN : 
COMPANY, INC.; YORK INTERNATIONAL : 
CORPORATION; AND ZURN INDUSTRIES, : 
LLC F/K/A ZURN INDUSTRIES, INC. A/K/A : 
ERIE CITY IRON WORKS : 
 : 
 : 
 : 
APPEAL OF: UNIVERSITY OF : 
PITTSBURGH - OF THE : 
COMMONWEALTH SYSTEM OF HIGHER : 
EDUCATION

**JUSTICE BROBSON**                                **DECIDED: JANUARY 22, 2025**

In *Tooey v. AK Steel Corp.*, 81 A.3d 851 (Pa. 2013), this Court held that the Workers' Compensation Act (WCA)[1] provides the exclusive remedy only for those occupational disease-based disabilities that "manifest within 300 weeks of an employee's last exposure to the hazards of the disease." *Tooey*, 81 A.3d at 865. For the reasons outlined in his dissenting opinion, I agree with Justice Wecht that this Court's decision in *Tooey* was "simply wrong." (Dissenting Op. at 13 (Wecht, J., dissenting).) Namely, as Justice Wecht cogently explains, the 300-week disease manifestation requirement in the WCA is unambiguous and reflects the General Assembly's clear intent "to prevent workers whose occupational diseases manifest beyond the statutory time limit from suing their employers in tort." (*Id.*; *see also id.* at 9-10 (discussing role of WCA's disease manifestation requirement as "an essential element of the grand bargain underlying the law").) To the extent that the *Tooey* Court looked beyond the "clear and unambiguous" language of the WCA to hold otherwise, I believe that this was in error. *See Commonwealth v. Green*, 291 A.3d 317, 327 (Pa. 2023) ("If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then 'we cannot disregard the letter of the statute under the pretext of pursuing its spirit.'").

On this point, I also agree with Justice Wecht that the *Tooey* Court compounded its error by invoking the WCA's "remedial purpose as a sort of tiebreaker," while failing to consider the "similar manifestation requirement" in the Occupational Disease Act (ODA).[2]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§ 1201-1603.

(Dissenting Op. at 14 (Wecht, J., dissenting) (citing Section 301(c) of the ODA, 77 P.S. § 1401(c)).)

Furthermore, I agree with Justice Wecht that the statutory language at issue here is distinct from the language that this Court considered in *Tooey*. Notably, and as Justice Wecht observes, where the WCA uses the word "apply," the ODA uses the word "mean." (*Id.* at 14 n.35.) This "variance in language," and the WCA's particular use of a term denoting "jurisdictional significance," suggests that the two acts are not "susceptible to the [same] construction." (*Id.* (citing *Herold v. Univ. of Pittsburgh*, 291 A.3d 489, 503 (Pa. Cmwlth. 2023) ("Herold's construction merely highlights that the ODA covers his claim but, in fact, offers no compensation for his devastating illness."))).) Consequently, I agree with Justice Wecht that "[t]he ODA's exclusive remedy provision applies to '*any* disability or death resulting from occupational disease,' regardless of whether that disability or death is a '*compensable* disability or death' under . . . Section 301(c)" of the ODA. (*Id.* at 16-17 (emphasis in original) (quoting Sections 303 and 301(c) of the ODA, 77 P.S. §§ 1403, 1401(c)).) Simply put, "[t]he unambiguous text of the ODA is not reasonably susceptible to any other construction," and this Court need not look further in pursuit of the law's spirit. (*Id.* at 19); *see also Green*, 291 A.3d at 327.

Due to these errors within the *Tooey* Court's analysis, I would take the opportunity to overrule the decision rather than rely upon it here to interpret the ODA's similar, but distinct, provisions. *See Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020) (providing "factors to consider in deciding whether to overrule a past decision, including 'the quality of [its] reasoning, the workability of the rule it established, its consistency with other related decisions, . . . and reliance on the decision'").

For these reasons, I respectfully dissent.